May I please the court, my name is Michael Maione on behalf of the appellant Vicente Quiroz. The first issue before the court is this. Did the government prove that Mr. Quiroz understood his Miranda rights? And the answer to that question is no. The government presented a single witness during a preliminary hearing, Agent O'Reilly who was the arresting officer. Agent O'Reilly testified that there was a single oral recitation of the Miranda warnings. He testified that that recitation took place outside of Mr. Quiroz's home with the inside of an agent's car with the door open. Importantly, after Agent O'Reilly asked Mr. Quiroz if he understood his rights, Mr. Quiroz didn't answer that question. His answer was non-responsive. He said, I did nothing. That's what he said. He said, I did nothing. After he heard the warnings, Agent O'Reilly asked, do you understand these rights as I've read them to you? And Mr. Quiroz said, I did nothing. And then made several other statements. So does that mean he's answering, saying he didn't do anything, meaning he's innocent or whatever? Or does that mean I don't know anything? What does that, how are you interpreting that? I think he was understanding that he was under arrest and was being accused of something and was just responding that he didn't do anything wrong. I think the context surrounding the question, do you understand your rights? And that response is telling. Mr. Quiroz was immediately outside his house. His children were present. The agent testified on four separate occasions without prompting that Mr. Quiroz was looking around and nervous. And for good reason. His children were present. He was, his house was being searched by several other agents and U.S. Marshals. And he was distracted. And I think that that single oral recitation followed by a non-responsive answer showed that he wasn't listening and didn't understand his rights. It certainly showed the government hadn't proven, as it must. He never testified to that effect. Mr. Quiroz did not testify during the hearing. No. The, Agent O'Reilly was the only witness and we only had one witness. So we have to infer the fact, there's no question that he was informed of his rights, right? There is no, the hearing concerned the question of whether or not the rights were actually read and we don't ask on appeal that you overturn the district court's finding that crediting the agent's statement that he did in fact read the rights. We don't challenge the fact that the rights were read. Well, he didn't read it. He just, because he'd memorized them so many times. Correct. He had his card and he testified that he was going from the card and off and using his memory. His card had a gap in it. It's not our challenge on this appeal that he didn't read the rights correctly or they weren't read. That was the principal focus in the district court though, right? I don't know what the, the point of the hearing was to determine whether or not Miranda was properly administered. Mr. Quiroz made a statement in a prior hearing that he was never given his Miranda rights and I think that's perfectly consistent with the agent's testimony and with the possibility that Mr. Quiroz wasn't listening. If Mr. Quiroz wasn't listening to the rights, rightfully distracted by the circumstances and didn't hear what Agent O'Reilly was saying to him, of course he would come into court and say, I was never given my Miranda rights. So I don't think this court needs to discredit the findings of the district court crediting Agent O'Reilly's statement and I don't think that that was inconsistent with what Mr. Quiroz said before that hearing. Importantly, without the answer, usually and in almost every case, in fact in every single case cited by the government or us in our briefs, the best evidence of understanding is an answer yes to the question, do you understand these rights? Every single case cited by either party on the briefs. Here we didn't have that. Now this court has considered before whether there are circumstances by which we can infer, the court can infer understanding without an express yes to that question. And that's where United States v. Brown, which the government relied on at the district court level and which the government again cites favorably at this level, is important. Because those factors that are cited by this court in Brown are conspicuously absent here. In Brown, first of all, the defendant actually did at least make an ambiguous answer yes to the question, do you understand these rights? That's not present here. Second, in Brown the government offered evidence that the defendant had prior experience with the judicial system and specifically with being administered his Miranda rights. The government didn't offer that evidence here. In this, in Brown, this court also said, another way that we can infer understanding from the circumstances is if the defendant in fact invokes his rights. He says, for example, I don't want to answer this question, but I will answer that question. That's a partial indication of the right to silence. But we don't have that here. Mr. Quiroz was answering agents' questions freely. In fact, Agent O'Reilly said several times that he was talking freely throughout their entire interview and there is no indication in the record that Mr. Quiroz ever invoked his right to counsel or his right to silence at any point. And then the final factor the court identified in Brown. In Brown, this court said that one way that we can infer understanding by conduct is if an arrestee attempts to leverage his ability to exercise his rights in exchange for consideration. The simple example would be, all right, I'll tell you what you want to know, but what are you going to give me? We don't see any evidence of that here, even though the agents were pressing Mr. Quiroz repeatedly to cooperate with them. If you give us something, we'll take that into consideration. Mr. Quiroz said he simply couldn't help them because he didn't know the answers to those questions. So all of those factors from Brown are absent, and we're left with nothing. The government simply did not present any evidence that Mr. Quiroz understood his rights here. Without it- So, counsel, you say there's nothing. At least the way I look at that, we've got the agent read him his rights. Defendant understands English. He did not seem confused to the agent who testified, right? That's correct, the agent said that. And district court credited that, right? The district court credited the agent's testimony generally, but to the statement, he seemed to understand that can't possibly be enough for the government to meet its burden. If all the agents testified- I'm not quite done with the list yet. The defendant responded with both exculpatory and inculpatory statements, right? And said he would not sign anything, right? So those are all correct. Those are all on the record. Okay, that doesn't strike me as nothing, as a basis for inferring that the defendant understood his right to remain silent. Perhaps I overstated our case, but I don't think it's sufficient for the government to meet its burden. Taking them in turn. First, the fact that the agent read the rights is a separate requirement. Under Tompkins, the additional showing of understanding is a separate requirement. Taking the fact that Mr. Quiroz made inculpatory and exculpatory statements. Well, inculpatory statements would have to be present in any case where the government was offering evidence against it. So if that's all that's required for the government to prove understanding, then the requirement is collapsed enough. But the point was that he was making both kinds of statements. Well, exculpatory statements, I don't think evince understanding. As we addressed in the briefs, any child would say, I didn't do anything wrong when accused of wrongdoing. If that's in a child that probably doesn't understand his rights, he might not even have any rights. I don't think that being arrested and saying, making exculpatory statements can be enough to prove understanding because any person is bound to make at least what they consider to be exculpatory statements. In fact, I think Mr. Quiroz's exculpatory and inculpatory statements indicate that he did not appreciate his rights or the gravity of the situation. He was joking with the officers that the narcotics at issue were for personal use. He seemed to have a demeanor, according to Agent O'Reilly's testimony, that simply doesn't match someone who appreciated the gravity of the statements that he was making. And the fact that they were going to be used against him later in a court of law, which is exactly the knowing and intelligent aspect of this that he needed to have in order for the government to make its case that he understood. His statements, the entire tenor of his interview per Agent O'Reilly- He didn't speak English? So speaking English, if speaking English is enough, I think that collapses the requirements very little. And I think that that's inconsistent with the theory that he wasn't listening. If I'm, I might speak English, but if I'm not listening to what- So he's in the back of the police car, the agent's reading his rights, but he's not listening? His children are running around. He's immediately outside his home with the door open. His house has just been searched. They brought a team of agents and U.S. Marshals there. I don't think it's unreasonable that he did not have a full appreciation of the rights that he was waiving at that time, after that sole oral recitation. With all the agents in the house and so forth, he didn't realize he was in trouble? I think he knew exactly that he was in trouble, but I don't think the standard is whether or not Mr. Quiroz understood that he was being accused of something or that he was under arrest. I think we can see that point. I think the point is whether or not he appreciated the fact that he was able not to say anything. I don't think that it is intuitive to any person that when a police officer asks them a question, they have a right not to answer it. I don't think it's intuitive or common sense to a person that when they are arrested by a police officer, they can have a lawyer come before they even answer any questions. That's what the court requires because it is above and beyond. Because it is asking that the police not only interrogate people, but that they get a full understanding and appreciation of the right being waived before any statements are admitted against people. So I don't think Mr. Quiroz didn't understand he was being accused of something, but I certainly don't think he understood that he had rights that he could invoke. I think the tenor of his interview indicates that. And I don't think it's unreasonable to think that he was not processing or listening to or appreciating this agent's recitation of the rights, considering the circumstances going on around him. More importantly, it's the government's burden to prove it. And taking the final factor that Your Honor just identified into consideration, I think the fact that Mr. Quiroz, I'm sorry, one other factor I think was that his general intelligence. Again, I think that goes to whether or not he was listening. Even Einstein, if not listening to information being given to him, would not understand. I don't think generally the fact that my client is an intelligent person, I've spoken to him personally, I don't think that's dispositive of this issue. Mr. Bayon, the bench trial was on the methamphetamine charges, right? Correct. Seventy pounds or so, is that right? It was a large quantity, well over the statute. It's an amazing quantity. The district judge, who was the trier of fact, said that the statements that Mr. Quiroz made did not affect his verdict. Why should we not take him at his word on that? Well, the government relied on that and then relied on case law that said that that is dispositive of the harmless error analysis. I think this case is unique for one important reason. The cases cited by the government, both Lee and Abdullah, both involved two different types of evidence. First, the defendant's confession. And second, eyewitnesses who in one case witnessed the bank robbery, and in another case, government agents who were surveilling the actual defendant participating in the drug transaction. If you drop the confession out, the eyewitness evidence isn't affected. It's just as strong. It's just as strong as it was without the confession. Here, Mr. Quiroz was denied a significant avenue of defense because of the admission of his confession. The evidence against him was his confession and admission that it was him on the calls and the calls. The calls were the primary evidence. Mr. Quiroz did not take the position at trial that the government didn't meet its burden of proving it was his voice on the calls. But absent the confession, absent the admission that he was, in fact, on the calls, he could have held the government to its burden of proving that it was his voice. The evidence is intertwined. This sounds like gamesmanship, if there's no doubt that it was his evidence. Because if he had tried to present evidence to the contrary, even a confession without Miranda would have been admissible to impeach, correct? Well, he wouldn't have been testifying, but he could have cross-examined, for example, the government's primary witness, the criminal informant, who identified his voice on the call. The criminal informant testified that he'd only met Mr. Quiroz twice. There could have been lines of cross-examination developed and an avenue of defense explored where the government didn't meet its burden of proving that it was Mr. Quiroz on the calls. I don't think that would get him. That would serve the cause of justice. How? Well, I think that we are dealing with a more majestic conception of the amendment, of the protections of an accused. When they are arrested, the government actually has to be held to its burden. Well, if you challenge the fact that he said it wasn't my voice, doesn't the government have a right to show it was? Of course the government could attempt to show that it was his voice. I think that's the tenor of Judge Hamilton's question. I understand, but the fact is... So it's going to come in. I think that the evidence could potentially come in that way. I don't want to get into all the different theories of the case. That's because it comes in because we want this system to be fair. Or what additional evidence the government could have put on if this were being disputed. I understand that, Your Honor, and I'm not saying it's not a valid point. I guess what I'm saying is that we don't know what evidence could have been developed because of how intertwined the evidence is here. That the district court's statement that he would have made the same result regardless can't quite hold muster if there would have been different theories of the evidence explored. I have some time for rebuttal, and I would like to reserve it unless Your Honor would like me to address other questions. Fine. Thank you. Mr. Mullaney. Good morning. May it please the court. Charles Mullaney on behalf of the government. The district court correctly determined that the defendant was advised of and waived his rights based on testimony of Agent O'Reilly who testified that the defendant was read his rights after the house had been searched and he was secured in the back of the rental car. And during the time, the defendant did not seem confused in any way, did not ask any questions, appeared to understand everything the agents were saying, and then immediately volunteered, I did nothing, and continued talking to the agents as they described their investigation to them. And as the district court found, it wasn't strictly an interrogation, it was a combination of answers to questions and volunteered statements in response to what the agents were saying. And the statements Mr. Quiroz made, that he's a compulsive liar, that he never touched the money or the drugs, was evidence that he was trying to talk his way out of the situation, and he did understand his rights. Do we have an explicit finding about understanding from the district judge? Yes. The district court said that he found that the defendant was read his rights and immediately volunteered statements showing that he... Do we have an explicit finding of understanding? I believe that the... No, the district court did not state, I find as a matter of fact that the defendant understood his rights. But the district court did state that he analyzed the issue of understanding and in his findings noted the volunteered statements, noted that he was crediting Agent O'Reilly's testimony, all of the testimony including the statements about Mr. Quiroz seeming to understand everything they were saying. And with regard to the cases that the defendant has cited on appeal, there isn't any strict requirement that the defendant state orally, yes, I understand my rights, and in fact the cases do recognize that, including the Brown case. Right, but we've got this problem here where we've got no express acknowledgment by the defendant of his understanding and no explicit finding by the district court. We've got to imply both of those to affirm this conviction, at least the marijuana conviction. And I look at the Supreme Court's decision in Tague against Louisiana, if memory serves correctly, where there was a summary reversal of the, by the U.S. Supreme Court because of the absence of a finding of understanding. Well, the district court, first of all, discussed the understanding in both his questions and then when he concluded, when the district court concluded, he found the defendant knowingly and voluntarily waived his rights, which is the ultimate conclusion that that analysis goes into. So that's implicit in that finding that he knowingly and voluntarily waived his rights is that he understood his rights. And as the appellant argues in the reply, there's no question that the understanding problem was that issue in the hearing, the district court made findings of it, and in fact, the district court was pressing the defense counsel on this point. Doesn't the fact that he volunteered statements indicate that he understood his rights and defense counsel conceded, right, that's possibly true, and went on to conclude with what was the original basis for the motion to suppress, that the defendant was never read his rights in the first place. So the district court certainly addressed the understanding prong and found that that was included in his ultimate finding that the defendant knowingly and voluntarily waived his rights. With regard to the Brown case cited by the appellant, that case does stand for the proposition that even the lack of a verbal acknowledgment that the defendant understands his rights does not mean that that condition is not satisfied because the defendant there, in similar circumstances, was read his rights in the back of a squad car, asked if he understood them, and he just nodded his head up and said, pssh, like that. And this court found that even if we're going to dismiss that as ambiguous, which would mean that they don't make a finding, that the defendant verbally acknowledged his rights, that he understood them, that his immediate actions can constitute an implied waiver. And the district court here found the defendant's actions the whole course of conduct after the Miranda warnings were read and continuing back at the DEA office where the defendant refused to sign anything and continued to try to talk his way out of it or offer assistance, also showed that the defendant understood his rights. In the Burgery case as well, the Supreme Court noted there was conflicting evidence as to whether the defendant verbally confirmed that he understood his rights, but the Supreme Court noted that Miranda warnings do not impose a formalistic waiver procedure. The suspect must follow in order to show understanding of his rights. And the absence of any confusion or lack of understanding is considered evidence that the defendant understood his rights, both the Villar case and the 2010 Lee case that we cited in our brief include that proposition where the court noted where there's no indication that the defendant was confused in Villar or in Lee, nothing in the sequence of events suggests the defendant did not understand the rights that were read to him. And for those reasons, based on the agent's testimony of the course of conduct and the district court's own finding that the defendant is an intelligent individual who understands English, there was a proper basis for finding that the defendant waived his Miranda rights. What was found in the search of the house? It was like a protective sweep to make for officer safety. So the agent testified that they cleared the house essentially to make sure there were no other people. Not a search for drugs? Correct. And to that point, the Miranda warnings were read after the search was complete. So the agents went all through that process and Mr. Quiroz was sitting in back of the rental car while the search was happening. The agents secured the scene. There's no testimony about his children running around on the lawn or elsewhere. The agent testified that he saw some kids when they first made the arrest. But in terms of the other circumstances or what Mr. Quiroz could have been distracted by, there's no evidence of that because Mr. Quiroz never testified or put on any evidence to that effect. And I will briefly address the issue of co-conspirator statements that is also raised in the appeal. The appellant... Well, here's the only co-conspirator statements at issue on appeal. Statements in the meth trial by Cesar where he called the confidential source, Benjamin Vance, and told him he'd be at the Rivers Casino and then told him he'd be in the parking lot. And then a statement in the marijuana trial by the other courier, Barraza, stating that he was calling on behalf of Inano, meaning Midget, as the defendant told him he would be, told Vance he would be, and then statements that he had 1,200 pounds of marijuana nearby telling Vance this, and he could bring them to them. Those statements are the only potential statements that were offered as co-conspirator statements under Rule 801D2E, and the district court properly admitted those statements to the extent they were offered for the truth of the matter asserted by the findings that a conspiracy existed between the defendant and the two couriers. And those statements are also admissible for other purposes such as instructions or directions and statements of intent. What was the evidence, other than the defendant's own admission, showing that it was him on the tapes? The statement, the testimony of Benjamin Vance, who previously knew the defendant, and the testimony of the agents who reviewed the recordings extensively before arresting Mr. Quiroz and then spoke with Mr. Quiroz extensively after the arrest. And for all these reasons, we ask that the court affirm the judgment's conviction in both trials below. Thank you. Amelia Bailey on behalf of the appellant. In our remaining time, I'd like to address two things. First, the issue of whether the district court made an explicit finding that our client understood his rights. As the government correctly pointed out, the district court did not. Instead, they made a finding that his rights were implied... there was an implied waiver of his rights. And when the district court made this finding, it said, it's an implied waiver when you talk after you've been told you don't have to talk. And this effectively collapses two of the required elements outlined in Tompkins for showing a waiver of the Miranda rights. Second, on the issue of harmless error, we don't contest that Mr. Quiroz's confession may have come in on cross-examination. Um, but of course, bringing in a confession on cross-examination is much different than bringing it in in your case in chief. Um, what we argue is, by admitting the confession, uh, the district court denied Mr. Quiroz a line of defense. Mr. Quiroz was unable to challenge the credibility or the strength of the phone calls. Um, which was, of course, the primary evidence brought against him. Um, and even though the government could have, um, referred to this confession, um, to challenge any argument we brought that the calls weren't accurate, um, again, we weren't even able to make that argument to begin with. Um, so for these reasons, um, the admission of Mr. Quiroz's confession was improper, and it was not harmless error. Thank you. Thank you, counsel. Thanks to all counsel. The, uh, case is taken under advisement.